WILLS *v.* ANCHOR CARTAGE & STORAGE CO. ET AL.

(Decided February 3, 1930.)

*Messrs. Anderson & Lamb,* for plaintiff in error. *Messrs. Dustin, McKeehan, Merrick, Arter & Stewart* and *Mr. Charles T. Rich,* for defendants in error.

LEVINE, J. The parties appear in the same order they did in the trial court. Anna H. Wills is herein referred to as plaintiff, the Anchor Cartage & Storage Company, as the Anchor Co., and the Grennan Cake Company as the Grennan Company.

The suit is for personal injuries, and comes to this court by error proceedings from the common pleas court. Originally the action was brought by the plaintiff against the Anchor Co. Soon there-

after the Grennan Company was made a party defendant. The cause was first tried in the common pleas court against these two defendants only, and resulted in a verdict in favor of both defendants. The plaintiff prosecuted error to this court (*Wills v. Anchor Cartage & Storage Co.,* 26 Ohio App., 66, 159 N. E., 124), which reversed the judgment entered upon the verdict in favor of the defendants, and remanded the cause for a new trial. The substance of the reversing entry is to be found in the statement that "the cause is reversed for error in the charge of the court and as being manifestly against the weight of the evidence."

After the cause was remanded for a new trial, and before it came again to be tried, the plaintiff made Arthur L. Moley a party defendant, and when the cause again came on for trial there were three defendants. When the matter was again tried to a jury plaintiff requested a special verdict under favor of Section 11462, General Code. Thereupon counsel for each of the parties prepared forms which each thought the jury ought to sign, this being the usual practice under *Rheinheimer v. Ætna Life Ins. Co.,* 77 Ohio St., 360, 83 N. E., 491, 15 L. R. A. (N. S.), 245, and these went to the jury room, and the jury signed the form prepared by counsel for the plaintiff, with certain additional matter written in with a pen. The jury found that, if the plaintiff was entitled to judgment on its verdict, her damages amounted to $20,000. Then followed lengthy argument and briefs of counsel, and, after the same were submitted to the trial court, the court entered judgment on the special verdict in favor of plaintiff and against defendant Moley, for $20,000, and entered

judgment thereon in favor of defendants the Anchor Co. and the Grennan Company.

Error proceedings are prosecuted to this court from the judgment of the common pleas court. The relief sought by plaintiff is, first, a reversal of the judgment of the common pleas court, and, second, a final judgment in her favor for $20,000 against the Anchor Company and the Grennan Company.

It becomes, of course, necessary to carefully go over the special verdict, which was signed by all twelve jurors. This special verdict is as follows:

"Exhibit B.
In the Court of Common Pleas
"No. 224,856
"State of Ohio, Cuyahoga County, SS.
"Anna Wills, Plaintiff, vs. The Anchor Cartage and Storage Company; The Grennan Cake Company, and Arthur L. Moley, Defendants.

"Findings of Facts.

"We, nine or more of the jury in the above entitled case, find, under the evidence in the case, the facts as follows:

"On the afternoon or evening of April 1st, 1924, the plaintiff, Anna Wills, came from her home in Youngstown, with Arthur Moley, by automobile, over that which is known as the Parkman Road or highway, to Cleveland; that in the evening of that day they attended a performance at Keith's and shortly thereafter started home, by automobile, along the said highway that they had used in coming to Cleveland; that the automobile in which Miss Wills was riding was an Essex car owned and driven by Moley; that Anna Wills up to the time of the accident had

never owned an automobile, had never driven an automobile and when she had ridden in any automobile it had been as a passenger, and she was a passenger in the Essex in going to Cleveland and attempting to return to said Youngstown.

"That the distance from Cleveland to Youngstown along Parkman highway, which was a much used and improved highway, was sixty-seven miles; that from a mile to two miles on the Cleveland side of Parkman is what is known as Young's hill; that at the top, or crest of said hill, to the left of one using the highway going in the direction of Parkman, was a dwelling house, and at the time of the accident it was occupied, but the house was all dark; that on the Cleveland side of Young's Hill, for some miles the improved highway was straight and on the Parkman side of Young's Hill, for about a quarter of a mile, the improved highway was also straight; that the improved part of the highway was eighteen feet wide, and at Young's Hill there was soft clay or dirt from two to three feet on either side of the improved highway and then a slope down into a ditch on either side; that we find these facts, as all others, by the greater weight of the evidence.

"We find that the truck of the corporation defendant, The Anchor Cartage & Storage Co., was used in the business of that company at the time of the accident and before the accident was controlled and operated by one Weagraff who was employed by said Anchor Cartage Company; that said vehicle consisted of a truck which was the motor or power part of said vehicle, and a trailer, and that the trailer at the time was loaded with electric light bulbs and its destination was the city of Cleveland; that there

were no other person or persons upon that truck or with the driver of the Anchor Cartage truck; that it had been raining or snowing, or both, to some extent, and this had made the highway slippery; that when this Anchor Cartage Company truck had arrived at Young's Hill the driver thereof, Weagraff, attempted to go to the top or crest of the hill and over the top or crest of the hill on his right-hand side of the highway; that when near the crest or top of said hill the truck, with the trailer at the rear, commenced to skid or slide; that the front part of the trailer overlapped the motor part or power part of the truck and was fastened thereto by a universal joint and when it commenced to skid, to slide, the trailer did not keep in a line to the rear of said motor or power part of the truck but turned as the truck slipped or skidded, so that it was to the side of the truck at an angle like an open jackknife, so that the rear part of the trailer was in the general direction of the front part of the truck; that it slipped or skidded over to the opposite side of the road, or driver's left side of the road, so that one or more wheels of the truck went into the soft clay or mud at the side of the brick and close to the brick, and that it remained in that position from that time until the accident occurred, which was about an hour and a half later in the night; that the night was dark and cloudy; that the driver of said Anchor truck then knew that it was impossible to get that part of the truck which was in the soft mud back upon the brick highway without the assistance of some other motor vehicle; that the truck and trailer slipped from one side of the highway to the other and one or more of the wheels went off into

the mud, and the truck itself, by reason of its slipping, did not stand parallel with the sides of the brick highway, but at an angle; that the truck and the trailer, after the truck was mired, obstructed the side of the improved highway that would be used by persons operating motor vehicles and others when such persons would be going in the direction of Parkman; in other words, the right-hand side of the road, going toward Parkman, was obstructed; that at said time on the front of the truck there were white lights burning and at the rear of the trailer there were two lights burning; that one of the lights at the rear of the trailer was a lantern with a red globe which could have been unfastened or detached from the trailer in a few minutes time; that to those operating motor cars or other vehicles in the direction of Cleveland for many hundreds of feet the view of said Anchor truck and trailer and the lights thereon could be seen, for there was no hill that prevented a full view; that the driver of said Anchor truck had a flashlight about eight inches long, which was in working order; that in addition to said flashlight, in said Anchor truck, easy of access, there was a lantern with a red globe, which lantern was in good working order and that before the accident the light with its red globe on the trailer and the lantern with the red globe in the truck were not placed at the crest or top of Young's Hill, so that they could be seen by people going from the direction of Cleveland in the direction of Parkman; that the nearest part of the truck or trailer to the top of Young's Hill was about one hundred feet more or less; that chains had been put on the wheels of the Anchor Company truck at

Parkman, from a mile to two miles from Young's Hill; that the truck and trailer was about twenty-five to thirty feet long and each was from six to seven feet wide.

"That the defendant, The Grennan Cake Co., a corporation, in its business owned and operated a truck and said truck on the night of the accident was being operated and controlled by a person in the employ of said corporation, by the name of Poehner; that riding with said Poehner at the time upon said cake company's truck was a man by the name of Simpkins, who was not in the employ of the corporation; that the said Grennan Cake Company's truck was proceeding on the business of the company from Youngstown to said Cleveland; that when it arrived at Young's Hill it stopped and the driver of said truck then made some investigation as to the position of the Anchor Company's truck and trailer and after making such observations decided to attempt to pass the said trailer and truck and run the risk of becoming mired; that in attempting to pass said trailer the right-hand wheel or wheels became mired in the soft clay on the driver's right-hand side of the brick road and it was mired to such an extent that it was impossible to get all the wheels back upon the brick road without the assistance of some other motor vehicle; that the lights upon the front of said cake company's truck were lighted and that the rays from said lights went in the direction of the top of Young's Hill on the driver's right-hand side of said brick road; that there were lights at the rear of said truck; that in addition thereto there was a light attached to a cord and the cord was attached to or

fastened to the cake company's truck and there was a lantern on said truck, easy of access, which lantern was in good working condition; that no chains had been placed upon the wheels of said truck and no attempt that night to place the chains upon the wheels of said truck was made until after the truck became mired; that the said cake truck was about eight feet wide; that from the time this cake company's truck became mired until the accident happened was about three-quarters of an hour; that where the driver of the cake company's truck first stopped the truck after arriving at Young's Hill did not exceed fifteen feet from the trailer, but after he made observations and .decided to attempt to pass the trailer, he did not become mired until he was passing the trailer.

"That no lights had been placed by anybody at the top of Young's Hill; no obstructions were placed on the top of Young's Hill; no one went to the top of Young's Hill and no warning or notice of any kind was there placed at any time before the accident, so that anyone operating a motor vehicle in the direction of Parkman would not know that the improved part of the highway which he was using in going toward Parkman was obstructed until he came to the crest of the hill.

"The Essex car driven by Moley, and in which Anna Wills was a passenger, arrived at the top of Young's Hill; that no chains had been put upon the wheels of Moley's car; that nothing was wrong with the brakes on the Essex car and the rays from the head-lights would reach two hundred feet or more and the headlights were lighted. That the car was a left-

hand control and Moley sat on the left and Miss Wills sat on the right in the front seat thereof; that in front of Moley, but not in front of Anna Wills, there was a windshield cleaner; that Moley operated his car up Young's Hill toward Parkman, at a rate of speed from twenty to thirty-five miles an hour and as he came to the crest or top of Young's Hill there was no person on the top of said hill or no light placed on the top of said hill—red or otherwise—or no barrier on the top of Young's Hill; that when he, Moley, saw the obstruction he then applied the foot and hand brakes on the Essex car and it skidded, or at least moved from there, and came into violent collision with the trailer of the Anchor Cartage Company's truck and then hit with force the front end of the cake company's truck.

"That the driver of the Anchor Cartage Company's truck knew that Moley's car was approaching as he had seen the lights of the approaching car about three-quarters of a mile in the distance from where the collision took place; that some little time thereafter he, the driver, started to go to the top of said hill for the purpose of warning or giving notice to the driver of said approaching automobile of the fact that the road on that said hill was obstructed; for the purpose of giving warning he took with him the flashlight and nothing else; that he only got about half way from where he had been standing to the top of said hill when the Essex car came over the top of said hill and collided with the trailer.

"That by reason of the collision with the trailer and the truck the skull of Miss Wills was fractured and other bones broken; that she was carried from

the place of the accident to Young's house; that the occupants of the house were then aroused and her unconscious body was taken into one of the rooms; that an ambulance was sent for; that about one hour or more thereafter an ambulance came from Warren, Ohio; that she was then placed in the ambulance and taken to a hospital at said Warren; that all the time she was in the Young house and all the time she was in the ambulance she was wholly unconscious; that it was necessary for her to remain and she did remain in the hospital at Warren, under the care of doctors and nurses for ten or eleven days, at which time she was removed, by ambulance, to her home in Youngstown; that at the time Miss Wills was injured her father and mother were dead and she was earning her own living by being employed by a visiting nurses' association at Youngstown at $140.00 a month; that she had been so employed for at least five years before she was injured and she had worked steadily without loss of any time except a few days for the five years; that now she is thirty-three years of age; that before the accident of April 2nd her health was good; that she had not experienced any other accidents or any serious illness; that she was a registered nurse and that she had passed all examinations necessary to becoming a registered nurse; that she had acquired three years of study and service in hospitals before she became a registered nurse; that before the accident at some time she had been employed in private practice as such registered nurse, at which time she was earning and able to earn $6.00 a day; that for two years and a half after said accident, by reason of said injuries

and effect thereof, she was unable to pursue her profession; that after the two years and a half she was and is employed in the City of Cleveland, where she is now a resident, in hospital work, at which she received $100.00 a month; that by reason of said head injuries she was caused brain injury and concussion of the brain; that as a result thereof it produced double vision, partial paralysis of the right side, dizzy spells and headaches and nervousness; that to some extent said numbness or partial paralysis, headaches, dizziness and double vision have continued to the present time and will continue to some extent in the future; that it was necessary to employ and she did employ doctors in the attempt to get relief or a cure; that she employed a number of such doctors; that the undisputed evidence shows that as a direct result of said injuries she has suffered pain and will experience pain in the future and that her ability to work and earn money has been impaired, and taking into consideration the pain, suffering, and all of her different injuries, her necessary expenses, the amount of money she lost by not being able to work for two and one-half years, she has been damaged in the sum of $20,000.00.

"There was some distance between the trucks before the accident. We also call the Court's attention to the Engineer's testimony."

We agree with the contention that the plaintiff's right to relief sought must depend solely upon that which is found within the four corners of the special verdict, and we cite the language of the Supreme Court in *Pennsylvania Rd. Co.* v. *Vitti, Admr.*, 111 Ohio St., 670, 146 N. E., 94, as follows: "The judg-

ment rendered on a special verdict by a jury under Section 11462, General Code, must be the legal conclusion from the facts found in such special verdict, and the court cannot look beyond such findings of fact."

It appears that Anna Wills and the defendant Moley were friends or acquaintances. The accident happened while the machine driven by Moley was proceeding toward Youngstown, Ohio. Miss Wills was a passenger, and inexperienced as respects the operation of motor cars. They traveled one of the main routes from Cleveland to Youngstown, going through Chagrin Falls, and thence on the road to Warren. Near Parkman there is a hill known as "Young's Hill." From the crest of that hill there is a slope both toward Cleveland and toward Parkman. Some time prior to the accident a truck of the Anchor Co., with a trailer attached, had been proceeding on the same road toward Cleveland. It had been raining or snowing, and the highway was slippery. In attempting to go up the Parkman side of "Young's Hill," the driver of the truck encountered difficulty and the truck commenced to slide backward. In sliding backward the truck and the trailer did not keep in line, but "jackknifed," as it was described by plaintiff. In sliding backward the truck and trailer went to the driver's left-hand side of the road, and one or more wheels of the truck went into the soft mud at the side of the brick. The driver could not get the truck back on the road.

The special verdict says that the truck did not stand parallel with the sides of the brick highway but at an angle. It is conceded that the truck and trailer in the position in which they stood obstructed

the right-hand side of the highway toward Warren and Youngstown. The truck had two white lights upon its front, and there were two lights burning upon the rear of the trailer. The place where the truck mired was about 100 feet from the crest of the hill.

Some time after the truck of the Anchor Co. became mired in the mud, the Grennan company's truck, also going toward Cleveland, came along. It stopped, and its driver made some investigation as to whether he could successfully pass the Anchor truck and trailer and proceed to Cleveland. In attempting so to do his truck went off the road on the right-hand side, and also became inextricably caught in the mud. The Grennan company's lights were lighted upon the front of the truck.

The special verdict is somewhat indefinite as to the space between the two trucks, and as to whether or not there was any room between them for an automobile to pass. The language of the special verdict is that "there was some distance between the trucks before the accident," without stating how much. While the trucks were in this position, Moley's machine came over the top of the hill. His car had headlights which would reach 200 feet or more. They were lighted. The record shows that he was going at a rate of speed from 20 to 35 miles per hour. When he saw the trucks in the road he put on his brakes, and skidded into them, injuring his passenger, the plaintiff, who sat in the right front seat. As to the exact point where he was when he first saw the trucks, the special verdict is silent. The special verdict shows that neither of the drivers of the

trucks placed a barricade or a light on top of the hill.

Nowhere in the special verdict is there any assertion that either of the drivers was at fault in becoming stuck in the mud. It is not claimed that either was at fault in not extricating his truck from the mud.

Plaintiff contends that there was a duty upon the drivers of the trucks to place red lanterns at the top of "Young's Hill" in order to warn drivers approaching in the direction of the trucks.

There is attached to the brief of plaintiff in error the full opinion of the Court of Appeals, wherein the verdict returned in favor of the Anchor Co. and the Grennan company was reversed.

It is contended that the Cuyahoga County Court of Appeals interpreted the facts in the instant case, and held that the Anchor Co. was guilty of negligence, that the Grennan company was guilty of negligence, and that the plaintiff was guilty of no negligence; that this finding of the Court of Appeals became the law of the case and was binding upon the trial court when the case again came on for trial. In other words, it is contended that the common pleas court was bound to adhere to the decision of the Court of Appeals and to make a similar finding.

Plaintiff maintains that when the jury signed the form of special findings prepared by her counsel there was nothing left for the trial court to do but to enter a verdict in the sum of $20,000 against the Anchor Co. and the Grennan company.

The entire contention of plaintiff is incorporated in substance in the following quotation from the brief of counsel: "It is for this court to say whether

the conduct of the defendants was right or wrong. It is for this court to say whether Moley drove properly or otherwise. It is for this court to say what the proximate cause of the collision was.''

The sections of the General Code relating to verdicts are Sections 11458, 11459 and 11460, as follows:

Section 11458: ''The verdict of a jury must be either general or special.''

Section 11459: ''A general verdict is one by which the jury finds, generally, upon any or all of the issues submitted, in favor either of the plaintiff or defendant.''

Section 11460: ''A special verdict is one by which the jury finds facts only as established by the evidence; and it must so present such facts, but not the evidence to prove them, that nothing remains for the court but to draw from the facts found, conclusions of law.''

Our attention of course must be centered upon Section 11460 in order to determine the office or function of a special verdict. The jury is not permitted to return the evidence which proves the facts. It is required instead to find such facts as were established by the evidence adduced at the trial.

In presenting the facts the jury must so present them that nothing remains for the court except to draw conclusions of law. The special verdict which is set forth in full in this opinion leaves out two essentials: First, was due care exercised? Second, what was the proximate cause of the accident?

If the contention of counsel for plaintiff is the correct one, that we are to regard the opinion of the Court of Appeals rendered in a previous hearing

against two of the defendants as the law of the case, and were we to construe the opinion of this court so rendered as a finding of law that the Anchor Co. and the Grennan company were guilty of negligence, and that such negligence was the proximate cause of the injury to plaintiff, the position of the plaintiff would be quite tenable. One, however, cannot help but wonder as to why a special verdict was needed at all, if the finding contained in the opinion of the Court of Appeals was to amount to a finding of law that there was negligence on the part of the two defendants which proximately caused the injury to plaintiff.

The concession on the part of plaintiff's counsel that it was necessary to submit a form of special finding of fact to the jury would seem to indicate that the effect of the previous decision of this court is not to preclude the right of the parties to have their case determined by a jury.

In the ordinary trial it would unquestionably be considered error were the trial judge to instruct the jury that a certain set of facts, not only amounts to negligence, but that the same amounts to proximate cause. These questions must always be left to the jury for its determination.

In the former hearing had in this court it was ordered that the case be remanded for a new trial for error in the charge of the court and because the verdict of the jury was manifestly against the weight of the evidence.

The power of the court to set aside a verdict on the ground that the same is manifestly against the weight of the evidence can be exercised only once, and this court would be powerless to set aside a verdict of a jury more than once on this particular

ground. When this case was remanded for a new trial, the trial court was bound to follow principles of law laid down by the Court of Appeals as applicable to this case and to regard the same as the law of the case.

The finding that the verdict is manifestly against the weight of the evidence is not, in our opinion, a finding of law. The jury still remains the trier of the facts. If the case had proceeded to a general verdict, and the trial court had instructed the jury that, if it found the set of facts to exist as now incorporated in the form of special findings prepared by plaintiff's counsel, it need not inquire into the question of whether the same amounts to negligence on the part of the two defendants, and further had instructed them that this set of facts amounts to proximate cause of the injury, the action of the trial court, it is clear to us, would amount to reversible error. But if the contention of counsel for plaintiff be correct, it would clearly be the duty of the trial judge to have given in substance these very instructions which would preclude the jury from inquiring into the question whether a certain set of facts constitutes negligence, and whether the same constitutes negligence which proximately caused the injury.

If the finding of the Court of Appeals by way of construing the evidentiary effect of certain facts constitutes the law of the case, then it would so constitute the law of the case whether the matter is submitted to the jury to bring in a special verdict or a general verdict.

Section 11462, General Code, reads: "When requested by either party, the court shall direct the

jury to give a special verdict in writing, upon any or all issues which the case presents.''

We gather from the language of the section that the special verdict must be a finding on all the issues of the case. The section which follows it, namely, Section 11463, provides for special findings upon particular questions of fact. These are to be returned only when there is a general verdict, and their purpose is to test the correctness of the general verdict. In this case the plaintiff did not request findings upon particular questions of fact. She requested a special verdict, or a special finding, which is governed by the preceding section. This special verdict must include all the issues which the case presents, before the trial judge is empowered to render judgment upon it. The omission to find as to whether the conduct of the defendants amounted to negligence, and likewise the omission to find that such negligence was the proximate cause of the injury, rendered the special verdict found in this case almost useless for the purpose which it intended to accomplish.

Despite the finding of the Court of Appeals in the previous hearing against these defendants that the verdict which exonerated them was manifestly against the weight of the evidence, and despite the assertion in the opinion of the court, which comments upon the facts and states that in the opinion of the court the same amounted to negligence which proximately caused the injury, the jury is still at liberty to differ from the court's view. The jury could still have found either that the defendants were not guilty of negligence or that the negligence of defendants was not the proximate cause of the injury. Had

the jury so found, the Court of Appeals would have been powerless to interfere with the verdict of the jury, because, as already stated, the authority of the Court of Appeals to reverse the judgment as manifestly against the weight of the evidence can be exercised but once.

An examination of the special verdict, or finding of facts, as counsel term it, reveals that it consists of a statement narrating in detail just what happened prior to and at the time of the accident. It is true that in the special verdict the jury found that no red lanterns were placed at the top of the hill so as to warn persons driving in the direction where the road was obstructed by the motor trucks. This finding in itself is not tantamount to a finding that, because of that failure to place the red lanterns as aforesaid, the servants of the two companies are deemed negligent.

In the event of a general verdict the jury would be under the duty of measuring this omission in the light of the circumstances, and by the standard of care observed by persons of ordinary prudence under similar circumstances. The trial court would be in error if it instructed the jury that such a failure to place red lanterns amounts in law to negligence, unless such failure is in violation of some express statutory enactment, or the ordinance of a municipality. Neither is this special finding tantamount to a finding that the negligence of the two companies was the proximate cause of the injury to plaintiff. In the event of a general verdict these issues of negligence and proximate cause would have to be left to the jury under proper instructions. We adopt the language of *Worst* v. *Colonial Savings Bank & Trust*

*Co.*, 11 Ohio App., 308, wherein the court said, at page 312: "In the absence of a general verdict, judgment should not be entered upon a special verdict of the jury unless the answers determine all the facts essential to the judgment without reference to the testimony. Such special verdict can not be aided by intendment or by extrinsic facts."

We are of the opinion that the trial court is not authorized to render a judgment upon a special verdict unless the special verdict was rendered in accordance with the language of our Code.

The plaintiff in this case requested that the jury return special findings, which are the same as a special verdict, upon all the issues which the case presents. Had the jury done so, the trial court would then have been authorized to render judgment. It is not otherwise so authorized. In order to render judgment in this case, the trial judge would be required to usurp the function of the jury on two important questions: (a) The question of negligence; (b) the question of proximate cause of the injuries.

"However clear and undisputed the evidence upon the issues not found, the court cannot render judgment without usurping in part the functions of the jury, thereby infringing a right guarantied by the Constitution and laws." Clementson on Special Verdicts, page 224.

We did not see fit to deal at length with the authorities cited in the briefs, for the reason that we deemed the propositions herein set forth as fundamental, in the light of the wording of our statute. A long line of Indiana cases, cited by both counsel, reveals an apparent conflict of opinion in the Indiana

courts, at least in so far as the language used in the various cases cited is concerned.

We are likewise convinced from the citation of adjudicated cases in Ohio that no matter what counsel choose to call them the special findings of the jury under our law cannot be made a basis for the judgment of the trial court unless the jury found on all issues, so that nothing remained for the court but to draw from the facts found conclusions of law.

We do not agree with the contention of counsel for defendants that the failure of the jury to find upon material issues is tantamount to an adverse finding against the plaintiff on those issues not included, for, unless the special verdict is returned by the jury in accordance with the requirements of our Code, it does not constitute a special verdict so as to authorize a judgment by the trial court.

The prayer of the petition in error is that the judgment of the common pleas court be reversed, and that plaintiff be restored to all things she has lost by reason thereof. We shall grant the prayer in so far as it seeks a reversal of the judgment of the common pleas court, and order the case remanded for a new trial according to law. The request of plaintiff that this court enter a judgment in her favor in the sum of $20,000 is denied.

The judgment is ordered reversed as contrary to law, and the cause is remanded to the common pleas court for a new trial.

*Judgment reversed and cause remanded.*

VICKERY, P. J., and SULLIVAN, J., concur.